COMMONWEALTH of Pennsylvania,
Appellee

v.

Steven Andrew ZIRKLE, Appellant.

Commonwealth of Pennsylvania,
Appellee

v.

Steven Andrew Zirkle, Appellant.

Superior Court of Pennsylvania.

Submitted Sept. 8, 2014.

Filed Dec. 18, 2014.

Reargument Denied Feb. 17, 2015.

Noah A. Erde, Meadville, for appellant.

Francis J. Schultz, Assistant District Attorney, Meadville, for Commonwealth, appellee.

BEFORE: FORD ELLIOTT, P.J.E., WECHT, J., and STRASSBURGER, J.*

OPINION BY WECHT, J.:

Steven Andrew Zirkle appeals the December 3, 2013 judgment of sentence. We affirm.

The trial testimony supports the following recitation of the material facts of the case. After church, on the morning of December 21, 2008, Christy Hamilton drove other church members to their homes. Notes of Testimony ("N.T."), 11/16/2009, at 95. On her way to one of their homes, Ms. Hamilton passed her own home and saw an unfamiliar truck in her driveway. *Id.* at 95–96. When Ms. Hamilton returned home, the truck was still in her driveway. *Id.* at 98–99. Upon entering her house, Ms. Hamilton saw things had been disturbed. For example, the drawers of her dining room hutch were open and items were hanging out of the drawers. *Id.* at 118. Other rooms also had been ransacked. Ms. Hamilton went to the hallway and saw Zirkle rush out of her bedroom. *Id.* at 119–20. Zirkle pushed Ms. Hamilton aside and told her not to follow him or he would shoot her. *Id.* at 120. Zirkle then got into the parked truck and drove away. Ms. Hamilton called the police. *Id.* at 122. After Zirkle left, Ms. Hamilton discovered that some money, including rolled coins and silver certificates, was missing. *Id.* at 126. This incident was the basis for the charges filed against Zirkle at CP–20–CR–0000147–2009 (hereinafter "Case 147").

On December 21, 2008, Douglas Robertson and his wife, Terry, also went to church, leaving their home around 10 a.m. N.T., 11/17/2009, at 95. At approximately 11 a.m., they received a call from their

---

* Retired Senior Judge assigned to the Superior Court.

daughter-in-law, alerting them that some-one had broken into their home. *Id.* at 97. When they returned, the house was in disarray and the front door jamb was broken. *Id.* at 98–99. However, nothing was missing from the house. *Id.* at 100.

On the same morning, Loretta Chase's husband and daughter left for work. *Id.* at 141. Ms. Chase went to work on her family's farm around 8 a.m. *Id.* at 142. She called her son, Matt, to come to the farm to help her. Matt arrived around 10:15 a.m. *Id.* at 142–43. Upon his return to their home around 11:15 a.m., Matt called Ms. Chase to tell her that someone had been in their home. *Id.* at 144–45. The house had been ransacked and Ms. Chase noticed footprints on the deck outside the home. *Id.* at 146. The incidents at the Williams' and the Chases' houses formed the basis for the charges filed against Zirkle at CP–20–CR–0000143–2009 (hereinafter "Case 143").

Pennsylvania State Trooper Christine Lench responded to Ms. Hamilton's call to the police. *Id.* at 170. Trooper Lench observed footprints in the snow leading to the front door of the Hamilton residence. *Id.* at 174. While interviewing Ms. Hamilton, Trooper Lench received a call about another break-in nearby. *Id.* at 179.

Trooper Lench then reported to the Robertson home. *Id.* at 189. Trooper Lench again found footprints in the snow on the front sidewalk and the back porch. *Id.* at 191, 194. While investigating the Robertson home, Trooper Lench learned of the Chase investigation and informed those troopers to look for footprints. N.T., 11/18/2009, at 9. Trooper Lench then went to the Chase home and found more footprints in the snow. *Id.* Trooper Lench took photographs of the footprints at all three locations. Trooper Lench opined that the footprints at all three houses matched each other. *Id.* at 11.

Corporal Kurt Sitler, then a trooper, was assigned to the investigation. N.T., 11/19/2009, at 18. An anonymous caller provided information about Zirkle being involved in the crimes, by telling police that the person who committed the crimes lived with a woman named Denise. *Id.* at 20. Through inquiries to the Meadville City Police and the state parole office, the police learned that Zirkle was the person described by the caller. *Id.* at 21–22. The police received a second anonymous phone call telling them where they could find Zirkle's truck. *Id.* at 28–29. The police found the truck and took Zirkle into custody. *Id.* at 30. Zirkle had silver certificates in his pocket. *Id.* at 31. Ms. Hamilton identified Zirkle in a photographic array. N.T., 11/16/2009, at 123–23. Ms. Hamilton identified the silver certificates as the ones that were taken from her home. N.T., 11/19/2009, at 33. Ms. Hamilton also identified Zirkle's truck as the one that had been in her driveway. *Id.* at 34. The police recovered rolls of coins from Zirkle's truck. *Id.* at 35.

Trooper Richard Pottorf, a member of the Forensic Unit, photographed the scenes, including the shoe impressions. N.T., 11/18/2009, at 90, 101. Trooper Pottorf collected fingerprints, but they did not match anyone in the database. *Id.* at 99–100; N.T., 11/18/2009 Vol. II, at 10–11. Trooper Pottorf determined that the tread pattern on Zirkle's boots was consistent with the footprints left at the three homes. *Id.* at 23–24. Trooper Pottorf took Zirkle's boots and gloves into evidence. He also fingerprinted some rolled coins that were found in Zirkle's truck, but did not find any usable prints. *Id.* at 33–35. Trooper Pottorf found glove impressions on the Robertson doorknob and determined that Zirkle's gloves matched those impressions. *Id.* at 43. Trooper Anthony Delucio, an expert in impression evidence,

determined that Zirkle's boots could have made the impressions at the three houses, which was the best that he could say given the conditions of the prints. *Id.* at 104.

The trial court summarized the procedural history of this case:

[Zirkle] was charged at [Case 143] with two counts of burglary, two counts of criminal trespass, and one count of criminal mischief, 18 Pa.C.S. §§ 3502(a), 3503(a)(1)(ii), 3304(a)(1), respectively, and at [Case 147] with one count each of burglary, criminal trespass, terroristic threats, theft by unlawful taking, and receiving stolen property, *id.* §§ 3502(a), 3503(a)(1)(ii), 2706, 3921(a), 3925(a), respectively. The two cases were consolidated for trial, at which Zirkle was self-represented [with stand-by counsel], and he was convicted on all ten counts. On January 27, 2010, he received an aggregate sentence of ten to twenty years of imprisonment at each case, to be served consecutively, with credit for 403 days of presentence incarceration.

Zirkle filed post-sentence motions for acquittal, for a new trial, and for sentence modification, which were all denied, and judgment of sentence was affirmed on appeal to the Superior Court. A timely filed petition under the Post Conviction Relief Act ("PCRA"), 42 Pa. C.S. § 9541 *et seq.*, resulted in the reinstatement of Zirkle's right to appeal to the Pennsylvania Supreme Court for discretionary review, but [allocatur] was denied on December 27, 2012.

Zirkle filed his second *pro se* PCRA petition on or about June 24, 2013, which [the PCRA court] treated as his initial petition and appointed counsel to represent him. In his counseled Amended Post–Conviction Relief Act Petition, Zirkle claimed, *inter alia*, the ineffective assistance of counsel in failing to argue on appeal that his three criminal trespass convictions were erroneously graded as second rather than third-degree felonies, because entry was made through unlocked doors without the use of force. [The PCRA court] agreed[1] and vacated his sentence, deferring ruling on all other issues raised in the Petition. Zirkle was resentenced on December 3, 2013 [and received an aggregate sentence of 205 months (seventeen years and one month) to 480 months' imprisonment, reducing his minimum sentence by almost three years], and has timely filed post-sentence motions for judgment of acquittal and for reconsideration of his sentence.

---

[1] [The PRCA court's memorandum and order] was entered on October 17, 2013, and the Pennsylvania Supreme Court subsequently held that an error in grading an offense concerns the conviction rather than sentence legality and is waived on appeal if not raised before the trial court. *Commonwealth v. Spruill*, 622 Pa. 299, 80 A.3d 453 (2013). Zirkle's charge of criminal trespass was graded as a second degree felony ("F–2"), as discussed infra, whereas the evidence established criminal trespass only as a third degree felony ("F–3"). This error in grading was not raised at sentencing or in a post-trial motion, and was therefore waived on appeal to the Superior Court, contrary to the remark at footnote 10 of [the PCRA court's] Memorandum. Consequently, Zirkle's appellate counsel may not have been ineffective for failing to raise it. Granting Zirkle post conviction relief was nevertheless appropriate, in light of the ineffective assistance of his *post-trial* counsel in failing to raise the grading error in Zirkle's original motion for acquittal.

Trial Court Memorandum & Order, 1/7/2014, at 1–2 (emphasis in original).

On January 7, 2014, the trial court denied Zirkle's post-sentence motions. On February 6, 2014, Zirkle filed a notice of appeal. On February 12, 2014, the trial court ordered Zirkle to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On March 4, 2014, Zirkle complied. On March 12,

2014, the trial court filed its opinion pursuant to Pa.R.A.P. 1925(a), in which it incorporated its January 7, 2014 memorandum and order.

Zirkle raises the following issues for our review:

1. Whether the Trial Court failed to follow the general principles within the sentencing guidelines when it sentenced [Zirkle]?

2. Whether the Trial Court abused its discretion when sentencing [Zirkle]? Specifically, [Zirkle] believes that the Trial Court's sentence was disproportionate to the crimes for which he was convicted. All told, for burglarizing three (3) homes, [Zirkle] was sentenced to 205 months (seventeen years and one month) to 480 months (forty years) of incarceration.

3. Whether the Trial Court erred in denying [Zirkle's] Motion for Reconsideration of Sentence?

Zirkle's Brief at 3.

 Although phrased differently, all of Zirkle's issues involve a challenge to the discretionary aspects of his sentence. Our standard of review is as follows:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Hoch,* 936 A.2d 515, 517–18 (Pa.Super.2007) (citation omitted).

The right to appellate review of the discretionary aspects of a sentence is not absolute, and must be considered a petition for permission to appeal. *See Hoch,* 936 A.2d at 518 (citation omitted). An appellant must satisfy a four-part test to invoke this Court's jurisdiction when challenging the discretionary aspects of a sentence.

[W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has a fatal defect; and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

*Commonwealth v. Moury,* 992 A.2d 162, 170 (Pa.Super.2010) (citations omitted).

*Commonwealth v. Buterbaugh,* 91 A.3d 1247, 1265–66 (Pa.Super.2014).

 Here, Zirkle has filed a timely notice of appeal and has preserved his issues in a post-sentence motion. Zirkle has also included a Pa.R.A.P. 2119(f) statement in his brief. Therefore, we must determine whether Zirkle has raised a substantial question.

A substantial question will be found where an appellant advances a colorable argument that the sentence imposed is either inconsistent with a specific provision of the Sentencing Code or is contrary to the fundamental norms which underlie the sentencing process. At a minimum, the Rule 2119(f) statement must articulate what particular provision of the code is violated, what fundamental norms the sentence violates, and the manner in which it violates that norm.

*Commonwealth v. Mastromarino,* 2 A.3d 581, 585–86 (Pa.Super.2010) (citation omitted).

In his Rule 2119(f) statement, Zirkle argues that his sentence was excessive. He lists three reasons why the trial court abused its discretion in sentencing. First, he argues that the trial court assigned too much weight to the impact of the crimes on the victims. Second, he contends that the court should not have ordered the sentences to run consecutively. Finally, Zirkle argues that the trial court failed to consider sufficiently that the crimes were "temporally continuous actions." Zirkle's Brief at 11.

■ Zirkle's first contention challenges the weight that the trial court gave to the various factors that it considered in sentencing Zirkle. Specifically, Zirkle argued that the court was unduly influenced by the victims' statements. However, we have held that a claim that a court did not weigh the factors as an appellant wishes does not raise a substantial question. *Commonwealth v. Bowersox,* 456 Pa.Super. 260, 690 A.2d 279, 281 (1997) (citing *Commonwealth v. Osteen,* 381 Pa.Super. 120, 552 A.2d 1124, 1128 (1989)).[1]

■ Zirkle's remaining arguments address the trial court's decision to run the sentences consecutively. He asserts that the consecutive nature of his sentences renders the aggregate sentence excessive. He also argues that, because the crimes happened in close temporal proximity to one another, the court should have ordered the sentences to be concurrent.

We have stated that the imposition of consecutive rather than concurrent sentences lies within the sound discretion of the sentencing court. *Commonwealth v. Lloyd,* 878 A.2d 867, 873 (Pa.Super.2005) (citing *Commonwealth v. Hoag,* 445 Pa.Super. 455, 665 A.2d 1212, 1214 (1995)). Long standing precedent of this Court recognizes that 42 Pa. C.S.A. § 9721 affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed. *Commonwealth v. Marts,* 889 A.2d 608, 612 (Pa.Super.2005) (citing *Commonwealth v. Graham,* 541 Pa. 173, 661 A.2d 1367, 1373 (1995)). A challenge to the imposition of consecutive rather than concurrent sentences does not present a substantial question regarding the discretionary aspects of sentence. *Lloyd,* 878 A.2d at 873. "We see no reason why [a defendant] should be afforded a 'volume discount' for his crimes by having all sentences run concurrently." *Hoag,* 665 A.2d at 1214.

*Commonwealth v. Johnson,* 961 A.2d 877, 880 (Pa.Super.2008) (citations modified).

However, we have recognized that a sentence can be so manifestly excessive in extreme circumstances that it may create a substantial question. *Commonwealth v. Moury,* 992 A.2d 162, 171–72 (Pa.Super.2010). When determining whether a substantial question has been raised, we have focused upon "whether the decision to sentence consecutively raises the aggregate sentence to, what appears upon its

---

1. Even if we were to reach the merits of this claim, Zirkle's argument is belied by the record. At sentencing, the trial court heard about Zirkle's completion of violence prevention programs while in prison and that he was no longer abusing drugs and alcohol. N.T., 12/3/2013, at 12, 15. The court recognized this progress and Zirkle's expression of remorse. *Id.* at 17. The court cited the victims' statements of fear and distress caused by the burglaries and the destruction caused by Zirkle during the burglaries. *Id.* at 19. It is clear the court considered Zirkle's arguments but weighed the facts and imposed its sentence.

face to be, an excessive level in light of the criminal conduct in this case." *Mastro-marino*, 2 A.3d at 588 (quoting *Common-wealth v. Gonzalez–Dejusus*, 994 A.2d 595, 599 (Pa.Super.2010)).[2]

■■■ Here, the criminal conduct included three counts of burglary, three counts of criminal trespass, one count of criminal mischief, one count of terroristic threats, and two theft counts. While a seventeen-year-and-one-month minimum sentence may seem harsh at first blush, given the charges involved, it is not so manifestly excessive as to raise a substantial question. Additionally, that the crimes occurred in close proximity is not disposi-tive. Zirkle is not entitled to a " 'volume discount' because the various crimes oc-curred in one continuous spree." This challenge does not raise a substantial question. *Gonzalez–Dejusus*, 994 A.2d at 599. Zirkle has not raised a substantial question and we do not reach the merits of his appeal.

Judgment of sentence affirmed.

President Judge EMERITUS FORD ELLIOTT joins the opinion.

Judge STRASSBURGER files a concurring opinion.

## CONCURRING OPINION BY STRASSBURGER, J.:

I join the Majority's holding that Zirkle failed to raise a substantial question that his sentence is inappropriate under the Sentencing Code. I write separately to ex-press my disquiet about this Court's limit-ed ability to review the nearly unfettered discretion given to trial courts in imposing consecutive or concurrent sentences.

If Zirkle's sentences had been ordered to run concurrently, he would have re-ceived an aggregate sentence of 72 to 144 months of incarceration. Instead, he was given all consecutive sentences, for an ag-gregate judgment of sentence of 205 to 480 months of incarceration. We presently af-firm that judgment of sentence, without reaching the merits of his claim, because, correctly applying the controlling case law, we hold that Zirkle's aggregate sentence is not manifestly excessive and thus he failed to raise a substantial question. According-ly, whether he was ordered to spend a minimum of 6 or 17 years in prison, or any amount in between, Zirkle is unable to have an appellate court even review the trial court's exercise of discretion. Under the current state of the law, the trial judge had absolute, unassailable discretion to or-der a term of incarceration that differed nearly by a factor of three.

My concern is not with the trial court's exercise of discretion in Zirkle's case, but with the fact that our review of a trial court's sentencing discretion in general, and its decision to impose consecutive or concurrent sentences in particular, is treated differently than our review of any other exercise of a trial court's discretion.

The abuse-of-discretion standard is ap-plied by this Court in reviewing trial courts' exercises of discretion on issues from the continuance of trial, *Common-wealth v. Antidormi*, 84 A.3d 736, 745 (Pa.Super.2014); to the withdrawal of a plea, *Commonwealth v. Gordy*, 73 A.3d 620, 624 (Pa.Super.2013); to the reception of evidence, *Commonwealth v. Akbar*, 91 A.3d 227, 235 (Pa.Super.2014); to the weight of the evidence, *Commonwealth v. Landis*, 89 A.3d 694, 699 (Pa.Super.2014).

---

2. Judge Strassburger's insightful concurrence articulates many important and compelling concerns regarding our inability to reach the merits of certain sentencing-related claims and the procedural difficulties of Pa.R.A.P. 2119(f). While we are sympathetic to those well-argued views, we are bound to follow our precedential law.

Thus, this Court is quite practiced in determining whether an appellant established that the trial court "ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." *Commonwealth v. Raven,* 97 A.3d 1244, 1253 (Pa.Super.2014) (quoting *Commonwealth v. Shugars,* 895 A.2d 1270, 1275 (Pa.Super.2006)).

There is no sound reason why, in reviewing a trial court's decision to impose consecutive sentences, we do not consider whether the record establishes any of these signs of discretionary abuse, but instead must focus on the procedural hurdles of Rule 2119(f) and the amorphous and inconsistent categorization of an issue as one that does or does not raise a substantial question. *See, e.g., Commonwealth v. Chilcote,* 396 Pa.Super. 106, 578 A.2d 429, 441 (1990) (Popovich, J., concurring) ("[C]ompliance with the requirements of [Rule 2119(f) ] wastes valuable judicial resources by adding an additional tier to our analysis of a defendant's attack on the discretionary aspects of his sentence...."); *Commonwealth v. McFarlin,* 402 Pa.Super. 502, 587 A.2d 732, 738 (1991) (*en banc* ) (Del Sole, J., dissenting) ("Widely divergent and inconsistent views of what constitutes a substantial question have arisen resulting in nonuniform treatment of a defendant's ability to appeal a sentencing matter.").

Indeed, not only is the disparate treatment of sentencing discretion unwarranted and unreasonable, it is also at odds with our Constitution. Under Article V, Section 9 of the Pennsylvania Constitution, "an accused has an absolute right to appeal." *Commonwealth v. Franklin,* 823 A.2d 906, 908 (Pa.Super.2003) (quoting *Commonwealth v. Wilkerson,* 490 Pa. 296, 416 A.2d 477, 479 (1980)). However, under 42 Pa.C.S. § 9781 and Pa.R.A.P. 2119(f),

this Court is permitted to grant allowance of appeal to review the discretionary aspects of a sentence only if we, in our discretion, find that the appellant filed the appropriate statement raising "a substantial question that the sentence imposed is not appropriate" under the Sentencing Code. 42 Pa.C.S. § 9781(b). Further, this Court's exercise of discretion in ruling on the discretionary aspects of a sentence is unreviewable. 42 Pa.C.S. § 9781(d) ("No appeal of the discretionary aspects of the sentence shall be permitted beyond the appellate court that has initial jurisdiction for such appeals."). Therefore, under Section 9781, this Court has complete, unreviewable discretion to deny a criminal defendant his or her right to an appeal the discretionary aspects of a sentence.

Section 9781(b) clearly infringes upon a defendant's absolute right to an appeal. While I acknowledge that an *en banc* panel of this Court has held that the infringement is a reasonable regulation of the right to an appeal, *McFarlin,* 587 A.2d at 736, I agree with the thoughtful analysis of this issue of the Honorable Joseph A. Del Sole and his conclusion that the statutory limitations placed upon a criminal defendant's right to an appeal the discretionary aspects of his or her sentence are unconstitutional:

Pennsylvania's procedure of indeterminate sentencing, "necessitates the granting of broad discretion to the trial judge, who must determine, among the sentencing alternatives and the range of permissible penalties, the proper sentence to be imposed." *Commonwealth v. Martin,* 466 Pa. 118, 351 A.2d 650 (1976). The Supreme Court of Pennsylvania has stated that the importance of this discretionary power cannot be overemphasized, and has examined its role and its potential for abuse in *Martin,*

*supra.* In this regard the [S]upreme [C]ourt has stated:

> [M]any commentators argue that it is one of the most important, and most easily abused powers vested in the trial court today. In *United States v. Waters,* [citation omitted], Judge Wilkey, speaking for the court, stated:
>
> > What happens to an offender after conviction is the least understood, the most fraught with irrational discrepancies, and the most in need of improvement of any phase in our criminal justice system.
>
> It is true that the sentence imposed is normally left undisturbed on appeal because the trial court is in a far better position to weigh the factors involved in such a determination. However, we have held that the court's discretion must be exercised within certain procedural limits, including the consideration of sufficient and accurate information.

[*Martin,*] 351 A.2d at 657 (footnotes omitted.)

Thus, the important power held by those who impose a discretionary sentence is a power which must be exercised within limits. As a check on those limits the citizens of this Commonwealth have been provided with the constitutional provision found in Article V, Section 9, which ensures that a defendant has a right to appeal. Section 9781(b) of the Sentencing Code eliminates that right, and instead gives the reviewing court the power to "grant" or "allow" appeal, in its discretion, when the discretionary aspects of a sentence are challenged.

... The question is not whether trial courts will or will not abuse their discretion. We assume members of the bench of this Commonwealth will exercise their duty in accordance with the high standards for which they are known, however we must recognize that mistakes do occur and appellate courts exist to remedy such situations. The real issue is the legislative attempt to permit our [C]ourt to exercise our discretion to limit review. This discretionary action, which is not subject to review, prohibits what our own constitution guarantees—the right to appeal.

\* \* \*

... I do not agree that [ ] any limitation placed on a person's right to appeal can withstand analysis under Article V, Section 9. While I agree that a person may waive their right to appeal by [his or her] own action, I reject the concept that the right may be eliminated by statute. Instead I agree with our distinguished colleague, Judge Zoran Popovich, who stated in his concurring opinion in *Chilcote,* "§ 9781(b) violates the absolute right of a defendant to appeal his sentence." [*Chilcote,* 578 A.2d at 441].

*McFarlin,* 587 A.2d at 738–39 (Del Sole, J., dissenting).

Accordingly, I am of the opinion that every criminal defendant, who preserves the issue for appeal, has the constitutional right to have this Court decide the merits of a claim that the sentencing court abused its discretion in imposing consecutive rather than concurrent sentences.