J-S41007-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MARTENUS I. SAUNDERS, | |
| Appellant | No. 2863 EDA 2015 |

Appeal from the Judgment of Sentence Entered August 24, 2015
In the Court of Common Pleas of Chester County
Criminal Division at No(s):
CP-15-CR-0003260-2010
CP-15-CR-0004120-2014

BEFORE:  BENDER, P.J.E., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.:                    **FILED JUNE 23, 2016**

Appellant, Martenus I. Saunders, appeals from the judgment of sentence of an aggregate term of 12 to 24 months' incarceration, followed by 5 years' probation, imposed after his terms of probation and parole were revoked in two separate cases.  Appellant solely challenges the discretionary aspects of his sentence.  We affirm.

A detailed recitation of the facts and procedural history of Appellant's two cases is unnecessary to our disposition of the issue he raises on appeal. We only briefly note that Appellant's underlying cases, consolidated below, involve convictions for offenses including statutory sexual assault (18

_____

[*] Former Justice specially assigned to the Superior Court.

Pa.C.S. § 3122.1), indecent assault of a person less than 13 years old (18 Pa.C.S. § 3126(a)(7)), corruption of minors (18 Pa.C.S. § 6301(a)(1)), and harassment (18 Pa.C.S. § 2709(a)(4)). While serving terms of probation and parole imposed for those convictions, Appellant repeatedly violated the terms of his supervision by not attending or participating in a daily sex offender treatment program in which Appellant was enrolled.[1] A probation/parole revocation hearing was conducted on August 24, 2015, at the close of which Appellant's probation and parole terms were revoked and the above-stated, aggregate sentence was imposed.

Appellant filed a timely post-sentence motion, which was denied on September 3, 2015. He then filed a timely notice of appeal and also complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Herein, he presents one issue for our review: "Did the [c]ourt commit [an] abuse of discretion in imposing a state sentence of 1 to 2 years followed by 5 years['] probation on CR-3260-10, as well as the concurrent sentences on CR-4120-2013, all of which were outside the probation guidelines of three to five months, in disregard of

_____

[1] This was the second time Appellant violated his probation/parole and was resentenced in these two cases. *See* Appellant's Brief at 12-13.

[Appellant's] mitigating condition of having both intellectual and physical disabilities?"  Appellant's Brief at 10.[2]

Our standard of reviewing Appellant's discretionary aspects of sentencing claim is as follows:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.
>
> The right to appellate review of the discretionary aspects of a sentence is not absolute, and must be considered a petition for permission to appeal. An appellant must satisfy a four-part test to invoke this Court's jurisdiction when challenging the discretionary aspects of a sentence.

---

[2] Preliminarily, we note that while Appellant does not explain his reference to the 'probation guidelines,' according to the Commonwealth:

> The guidelines that [Appellant] is referring to are guidelines developed by the Chester County Adult Probation Department to assist their officers in making consistent sentencing recommendations.  These guidelines are not binding upon the Chester County Adult Probation Department, [n]or the Chester County Court of Common Pleas.

Commonwealth's Brief at 21-22.  Appellant cites no legal authority to support his suggestion that the Chester County Adult Probation Department guidelines must be considered by the court when imposing a sentence following the revocation of a defendant's probation/parole.  Moreover, "it is well settled that the [state] sentencing guidelines do not apply to sentences imposed as a result of probation or parole revocations…." ***Commonwealth v. Coolbaugh***, 770 A.2d 788, 792 (Pa. Super. 2001) (citations, internal quotation marks, and brackets omitted).

> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has a fatal defect; and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

*Commonwealth v. Zirkle*, 107 A.3d 127, 132 (Pa. Super. 2014) (internal citations omitted).

Here, Appellant has filed a timely notice of appeal, and he also preserved his sentencing claim in a post-sentence motion. In Appellant's brief, he sets forth a statement in accordance with Pa.R.A.P. 2119(f), arguing that he has presented a substantial question for our review.

> A substantial question will be found where an appellant advances a colorable argument that the sentence imposed is either inconsistent with a specific provision of the Sentencing Code or is contrary to the fundamental norms which underlie the sentencing process. At a minimum, the Rule 2119(f) statement must articulate what particular provision of the code is violated, what fundamental norms the sentence violates, and the manner in which it violates that norm.

*Id.* (citation omitted).

In his Rule 2119(f) statement, Appellant avers that the revocation of probation and parole (and, thus, his resultant sentence) was premised on his failure to attend and participate in sex offender counseling, yet the court failed to take into account that attending the STAR program, to which Appellant had been assigned, required him to travel "more than two hours away by public transportation" on a daily basis. Appellant's Brief at 13. According to Appellant, traveling to this extent was extremely difficult

because he "suffers [from] Cerebral Palsy, and has an IQ that tested at 49, which is indicative of significant sub-average intellectual functioning." Appellant's Brief at 13-14. Appellant contends that these "practical difficulties of attending [s]ex [o]ffender class[,]" and "the existence of other options for treatment," constituted "mitigating factors" that the court failed to consider in imposing his sentence of 12 to 24 months' incarceration. *Id.* at 14.

Essentially, Appellant claims that the trial court failed to give proper weight to mitigating factors, which this Court has found does *not* present a substantial question for our review. *See Commonwealth v. Disalvo*, 70 A.3d 900, 903 (Pa. Super. 2013) (quoting *Commonwealth v. Downing*, 990 A.2d 788, 794 (Pa. Super. 2010) ("[T]his Court has held on numerous occasions that a claim of inadequate consideration of mitigating factors does not raise a substantial question for our review.") (citation omitted)).

In any event, even if this claim did present a substantial question, we would deem it meritless. Initially, the court had the benefit of a presentence report. *See* N.T. Revocation/Resentencing Hearing, 8/24/15, at 8. That report indicated that Appellant had been late for his sex offender treatment program, or left the program early, "in excess of 90 times…." *Id.* at 3. After the court noted this fact, defense counsel argued that Appellant's issues with attending the program were due to the fact that it took him over two hours, by public transportation, to get there. *Id.* at 7-8. Counsel also stressed that Appellant's IQ was "very low[,]" and that with these

- 5 -

difficulties, it was a "significant burden" for Appellant to travel to the program every day. *Id.* at 8.

However, other information provided to the court demonstrated that Appellant's failure to attend, or participate in, the program was not based only on the travel difficulties and his low IQ. For instance, Appellant's probation officer informed the court that she had supervised Appellant "for four or five years" and had "tried everything to get him to engage not only in therapy but to … [get] a job, and he just will do what he wants to do." *Id.* at 10. The probation officer continued:

> Probation Officer: The last time we were in front of a judge for a revocation hearing, [Appellant] had asked for individual therapy. We set him up with a therapist at Human Services to address his anger issue one on one and anything else he wanted to discuss that he didn't feel he could bring out in group, and he never went to any of the appointments. He would come in and tell me this long story about this discussion he had with his therapist, and I would call and the therapist is, like, he canceled his appointment. He never showed.
>
> So [Appellant's] aunt asked me to bring him in to do community service with our community service work crew to have some idle time occupied. He didn't like doing that after a while and stopped showing. He wanted to get a job. He said he didn't want to do community service. He wasn't getting paid for it. We got him a job with Handi-Crafters out in Coatesville and Thorndale. Eventually, that fell through because he didn't like going. He would be late. He had problems with other people there. He kept getting thrown off the Rover Bus. He assaulted the bus driver.
>
> When he came in for the last revocation hearing, the … recommendation [was] to [assign Appellant to] the STAR program in Norristown. He would be in therapy [from] nine to three. He would have a structured day, but he wasn't -- I couldn't get him back on the Rover Bus. I called the company

and asked for, you know, would you please make a concession this one time and allow him back on and they said, no.

His aunt then did say, [w]ell, you know, we'll make sure he gets to the STAR program, but he is going to have to navigate public transportation at the time. … And [Appellant] is pretty -- he is pretty good at navigating public transportation. He was able to get there, but he wouldn't set his alarm clock.

*Id.* at 10-12.

After listening to the probation officer's statements, the court remarked that the information it had before it indicated that Appellant was not "engaged" when he was at therapy; instead, Appellant would "lay [his] head down and take naps and leave early." *Id.* at 12. Appellant responded, claiming that he "felt that [he] wasn't sometimes being heard, and [he] just gave up…." *Id.* However, the court stressed that Appellant's probation officer had "bent over backwards and tried to help [Appellant]," *id.* at 12-13, but that Appellant did not do "what [he was] supposed to do over and over and over again." *Id.* at 14.

Also notable to the court's sentencing decision is the fact that defense counsel conceded that Appellant needed sex offender treatment, and the parties agreed that such treatment was not offered in the county jail. *Id.* at 16-17. Considering Appellant's failure to participate in the treatment program while not incarcerated, the danger he posed to society,[3] and the lack of treatment programs offered by the county prison, the court

---

[3] The court also was informed that during treatment, Appellant had admitted to abusing two more victims under the age of seven. *Id.* at 3.

concluded that a 'state' sentence of 12 to 24 months' incarceration, with credit for 6 months Appellant had previously served in the county jail, was the most appropriate sentence in this case. *See id.* at 17-19.

The record demonstrates that the revocation court carefully fashioned a sentence that would serve Appellant's rehabilitative needs while also protecting the community. The court clearly considered the mitigating factors discussed by Appellant herein, but concluded, for the reasons mentioned, *supra*, that a sentence of incarceration in a State Correctional Institution was appropriate. Therefore, even had Appellant presented a substantial question for our review, nothing in the record supports his assertion that the court abused its discretion in fashioning his sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/23/2016