J-A22028-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JACQUELINE ROSE HARRIGAN | |
| Appellant | No. 2798 EDA 2016 |

Appeal from the Judgment of Sentence June 28, 2016
In the Court of Common Pleas of Monroe County
Criminal Division at No(s): CP-45-CR-0000353-2014

BEFORE: BOWES, J., LAZARUS, J., and PLATT, J.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED OCTOBER 20, 2017**

Jacqueline Rose Harrigan appeals from the judgment of sentence entered in the Court of Common Pleas of Monroe County, after she entered a plea of guilty to one count of criminal homicide – murder in the third degree[1] as an accomplice. On appeal, Harrigan challenges the discretionary aspects of her sentence. Upon careful review, we affirm.

Harrigan pled guilty to acting as an accomplice to the shooting death of the father of an individual who Harrigan and her friends blamed for stealing money from Harrigan's friend during a drug deal gone bad. She did so while

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 2502(c).

out on bail for charges related to her involvement in another homicide. As a part of her plea bargain in this case, Harrigan testified for the Commonwealth in trials related to both crimes.

Harrigan was sentenced on June 28, 2016 to a term of 10 to 40 years' incarceration. Harrigan filed a motion to reconsider sentence and the court held a hearing on August 1, 2016, after which the motion was denied. This timely appeal follows, in which Harrigan claims that the trial court imposed a "manifestly unreasonable" sentence.

Harrigan raises a challenge to the discretionary aspects of her sentence. Such a claim does not entitle an appellant to review as a matter of right. *Commonwealth v. Swope*, 123 A.3d 333, 337 (Pa. Super. 2015). Rather, before this Court can address such a discretionary challenge, an appellant must comply with the following requirements:

> An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

*Id.*, quoting *Commonwealth v. Allen*, 24 A.3d 1058, 1064 (Pa. Super. 2011).

Here, Harrigan filed a post-sentence motion raising her sentencing claim, followed by a timely notice of appeal to this Court. She has also

included in her brief a concise statement of reasons relied upon for allowance of appeal with respect to the discretionary aspects of her sentence pursuant to Pa.R.A.P. 2119(f). Accordingly, we must now determine whether she has raised a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

In her Rule 2119(f) statement, Harrigan asserts that her sentence was contrary to the fundamental norms of the sentencing process because it was inconsistent with the sentencing scheme of her codefendant, and there existed no facts to warrant the disparity. This Court has previously held that a disparity between sentences imposed upon co-defendants touches upon the fundamental norms which underlie the sentencing process and, therefore, raises a substantial question. *Commonwealth v. Canfield*, 639 A.2d 46, 49 (Pa. Super. 1994), overruled on other grounds by *Commonwealth v. Mouzon*, 812 A.2d 617 (Pa. 2002). Accordingly, we will address the merits of Harrigan's claim.

We begin by noting our standard of review:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Zirkle*, 107 A.3d 127, 132 (Pa. Super. 2014) (citation omitted).

Our analysis requires a brief recitation of the facts leading to the murder in this case, which the trial court set forth as follows:

> On January 13, 2014, Kaylynn Bunnell and her boyfriend Matt Flores arranged to purchase Percocet from Brandon Kravchenko at the Big Star [Drive-In Restaurant] in Stroudsburg. Upon arrival at the Big Star, Flores left Bunnell's vehicle and entered the vehicle of an unknown male identified as "Jordan." When Flores returned to Bunnell's car he indicated that "Jordan" had pulled a gun and robbed him.
>
> Bunnell, very upset and seeking to be consoled, called her friend, [Harrigan]. [Harrigan] was asleep and her boyfriend, Bruce Murray, answered. Bunnell told Murray about the robbery and Murray asked her if she wanted to do anything about getting her money back. Bunnell answered, "of course." Murray then asked Bunnell where Kravchenko lived.

Trial Court Opinion, 10/28/16, at 1 (citation to record omitted). Ultimately, Bunnell drove a car containing Harrigan and three others to the trailer park where Kravchenko lived. Bunnell and Harrigan knocked on Kravchenko's trailer door; he was not at home, but "Jordan" was inside. Subsequently, as Bunnell drove slowly past the trailer, two other individuals shot at the trailer from inside the vehicle, hitting and killing Kravchenko's father.

This incident occurred while Harrigan was on bail for her involvement in another homicide. In that case, Harrigan's then-boyfriend, William McRae, robbed and killed Brandon Fraser using a gun given to him by Harrigan. The trial court set forth the circumstances surrounding that murder as follows:

> [O]n the night of the homicide, McRae told [Harrigan] to text with Mr. Fraser, keep him busy, and to flirt with him. "Jus spin him, laugh at his jokes alil; Don't meet wit him tho. . Stall him and say you wanna hook up later on tonight!! Your doin stuff w/ your gurl rite now" [sic] The two continued to text until Mr. Fraser asked

- 4 -

> for her to pick a place for them to meet up. At that point Mr. Fraser ceased texting. The following day, after the discovery by police of Mr. Fraser's body, McRae gave [Harrigan] a used shell casing wrapped in tissue and was told to deliver it to a "guy named Smily because [McRae and Smiley] were having differences." [Harrigan] delivered said shell casing to "Smiley" saying "compliments of Will." That shell casing would later be identified as having been fired from the murder weapon.

*Id.* at 6 (citations to record omitted). After being interviewed by police in connection with that case, Harrigan contacted McCrae to warn him that there was a warrant for his arrest and assisted him in retrieving his vehicle during the period of time he was wanted by the police. She ultimately pled guilty to one count of hindering apprehension.

Harrigan was sentenced on both cases on June 28, 2016. In addition to the 10 to 40 year term she received on the instant matter, she was sentenced to a term of 3 to 12 months' incarceration on the hindering charge, to run concurrently to the sentence imposed in the instant matter.

Bunnell, the driver in the Kravchenko murder, also pled guilty to criminal homicide – murder in the third degree as an accomplice and, like Harrigan, was sentenced to 10 to 40 years' incarceration. However, after Bunnell filed for reconsideration, her sentence was reduced to 10 to 25 years in prison. Harrigan claims that her sentence, when compared to that of Bunnell, is unsupported by the facts. Harrigan asserts that numerous factors favorably distinguished her from Bunnell, and that, as a result, she should have received a lower minimum sentence than Bunnell. Specifically, Harrigan noted the following: (1) unlike Bunnell, Harrigan provided testimony in two murder

trials; (2) Bunnell was the "direct catalyst" in the Kravchenko homicide, whereas Harrigan "was led into trouble" by Bunnell; (3) Harrigan was a victim of abuse and manipulation by the more culpable co-conspirators, unlike Bunnell; (4) Harrigan's father died after she wished him dead during an argument, causing her to suffer a "teenage crisis"; (5) unlike Bunnell, Harrigan immediately embraced her incarceration as an opportunity to correct the course of her life. *See* Brief of Appellant, at 18-19. In light of these mitigating factors not present in Bunnell's background, Harrigan argues that her sentence, when compared to Bunnell's, is manifestly unjust. We disagree.

> The law is well-settled that co-defendants are not required to receive identical sentences. Generally, a sentencing court must indicate the reasons for differences in sentences between co-defendants. This is not to say, however, that the court must specifically refer to the sentence of a co-defendant. Rather, it requires that when there is a disparity between co-defendants' sentences, a sentencing court must give reasons particular to each defendant explaining why they received their individual sentences.

*Commonwealth v. Mastromarino*, 2 A.3d 581, 589 (Pa. Super. 2010) (internal citations and quotation marks omitted).

Here, Harrigan challenges her sentence for criminal homicide – third degree murder as an accomplice. She had a prior record score of zero and an offense gravity score of 14. Accordingly, the standard guideline range sentence is 72 months to the statutory limit, ± 12. Harrigan received a sentence of 120 to 480 months, which is well within, and toward the lower end of, the standard range.

- 6 -

The sentencing court provided specific reasons for sentencing Harrigan

in the manner it did.  At sentencing, the court made the following statement:

> THE COURT:  Well, Ms. Harrigan, I don't need to tell you that these two cases for a variety of reasons were some of the most disturbing cases I have had . . .  mostly because they involved extremely young people doing some of the worst things that we're able to see which is killing other people, randomly, purposely, for reasons that still in my mind are really inexplicable.
>
> I recognize that you come before the [c]ourt with a clean record. I mean, there is a couple – there's a little juvenile – I think it was like a summary or an M3 theft that was *nolle prossed*, and then your other issues before that were drug related.
>
> I understand the impact that the loss of your father would have on you, and certainly the timing of your decline is directly related to that.  How during that period of time, however, there was not either something within your family, your friends, someone, school, anywhere, that would have helped you is kind of beyond me, and I'm still puzzled by that.
>
> And there's no doubt that you have done well during your period of incarceration, much better than anybody else we've seen, and that you have taken advantage of your situation currently.
>
> I did sit through both of these trials and did all the pretrial work. I have seen your testimony firsthand, and I agree with Mr. Mancuso [counsel for the Commonwealth] on the impact of that testimony as well as your proffers which I've read.  So you've done this from the very beginning of the case, and I think that counts for something.
>
> When I also look at the verdicts after trial, particularly in the Wilson case, I think I factored that in with respect to your plea in this case as well.  And as Mr. Mancuso said, you try to fit that in to the larger scheme of sentencing depending upon what each of the other individuals has in their background as well as where you are here.
>
> You can't ignore the fact that you were an integral part in the killing of Mr. Fraser because of that weapon as well as the texting aspect of that.  With respect to the texting, I'm not sure I believe that you had no idea what was going on there.  With respect to

[the Kravchenko murder], again, you were very much of a catalyst in this entire event and outcome.

So these are all of the things that have to be balanced. . . . I do not believe a mitigated range sentence is appropriate in this case at all. While I recognize that the gang hierarchy – and it's true that women – I remember because they kept calling them shorties – are treated like absolute garbage, like dirt, and definitely are subject to abuse and are essentially property of the gang.

And I also recognize that there is not only a need to belong to this family of a gang but also probably a fear that is part and parcel of what could happen to you if you don't go along with what's going on. So I'm trying to reconcile all of that and balance it.

So I think your cooperation, all of the good that you've been able – that you did up until the time of this thing happening, the drug involvement, all of that, plays a part in the sentence I'm going to give you, but I don't think a mitigated sentence is an appropriate sentence in this case.

We do have the aggravating factor that you were on bail. It was posted, I believe, when the offense in the criminal homicide occurred.

N.T. Sentencing, 6/28/16, 16-19.

As demonstrated by the foregoing, the trial court took both mitigating and aggravating factors into consideration in fashioning Harrigan's sentence. However, as the court noted in its opinion, Harrigan's

mitigating factors must be weighed against all other factors. One cannot ignore [the] fact that [Harrigan] played an integral part in the killing of Mr. Kravchenko, [and] was involved in the murder of Mr. Fraser. This speaks to the major aggravating circumstance present only in [Harrigan's] case, that she was on bail, having posted surety set at $20,000[,] secured[,] in the [Fraser case], when she committed the offense [in this matter].

Trial Court Opinion, 10/28/16, at 10-11 (internal citations to record omitted; emphasis in original).

In light of the foregoing, we cannot say that the court committed an abuse of discretion in fashioning Harrigan's sentence. The sentence itself fell in the lower end of the standard range of the guidelines, and the trial court adequately explained its reasoning for sentencing Harrigan in the manner it did, which is all that is required when a trial court imposes disparate sentences[2] on co-defendants for the same criminal acts. **Mastromarino**, **supra**.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/20/2017

_____

[2] We would note that the sentences imposed upon Harrigan and Bunnell are not, in fact, disparate, in that they received the same minimum sentence. Further, although the court ultimately reduced Bunnell's maximum sentence on reconsideration, Harrigan did not seek reduction on her maximum. Indeed, at the hearing on Harrigan's motion for reconsideration, her counsel stated: "I'm not in any way looking to touch the top end of the [c]ourt's [o]rder. I recognize essentially Ms. Harrigan through her conduct while incarcerated will decide how long she remains in the custody of the Department of Corrections, and it could be up to 40 years if she does not demonstrate an understanding of her behavior and continue to operate on the right side of the law and do the right things." N.T. Motion for Reconsideration, 8/1/16, at 2-3.