J-S40012-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WILLIAM MILLER | : | |
| | : | |
| Appellant | : | No. 499 EDA 2017 |

Appeal from the Judgment of Sentence January 5, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-00008079-2014,
CP-51-CR-0008078-2014

BEFORE:   LAZARUS, J., DUBOW, J., and PLATT, J.*

MEMORANDUM BY DUBOW, J.:                **FILED SEPTEMBER 13, 2018**

Appellant, William Miller, appeals from the January 5, 2017 Judgment of Sentence imposed following his entry of a *nolo contendere* plea to two counts of Aggravated Assault, and one count each of Neglect of Care— Dependent Person and Terroristic Threats.[1]  We affirm.

The trial court recounted the facts of this matter as follows:

[Appellant] met the complainants Vivian Simmons, now 87 years old, and her brother Samuel Simmons, 85 years old, through Vivian's home healthcare worker, Gloria Jenkins.  [Appellant] reached an agreement whereby he would live in the siblings' home at 3956 North Percy Street rent-free, in exchange for helping to take care of them both.  Around 2011, [Appellant] began to verbally and physically abuse Vivian and Samuel.  The physical abuse included [Appellant] grabbing Vivian's hands and twisting them.  This resulted in her having continuing pain in both hands.

_____

[1] 18 Pa.C.S. § 2702(a)(1); 18 Pa.C.S. § 2713(a)(1); and 18 Pa.C.S. § 2706(a)(1), respectively.

_____

*   Retired Senior Judge assigned to the Superior Court.

On multiple occasions, [Appellant] also pushed Vivian down on her bed and slapped her on the left side of her face.

The verbal abuse consisted of [Appellant] calling both Vivian and Samuel "motherfuckers, old hag, mule face, jackass" and Vivian a "bitch." The verbal abuse took place on multiple occasions. Additionally, in an effort to keep Vivian and Samuel from reporting the abuse to the police, [Appellant] threatened both Vivian and Samuel. He stated that he would kill them and that the police would find their bodies in the basement. The last known instance of abuse by [Appellant] to Vivian occurred in March 2014. [Appellant] punched Vivian approximately five times on the left side of her face because she didn't have five dollars to give [Appellant], upon his request, after shaving Samuel. [Appellant] told Vivian he punched her because she deserved it. At the time of Vivian's interview with the police in April 2014, she described still having a swollen lip and her face being very sore from the last act of abuse by [Appellant].

The physical abuse sustained by Samuel consisted of [Appellant] hitting Samuel every other day on the hands, face, and even on the buttocks and legs with a belt. Additionally, [Appellant] would often tease Samuel and call him names because he was incontinent. On one occasion[, Appellant] put a wig on Samuel and called him a girl in order to humiliate him. The last known instance of abuse by [Appellant] to Samuel occurred on March 19, 2014. On that occasion, Samuel had mucus coming from his mouth as a result of medication he was taking. [Appellant] was heard by Vivian hitting Samuel and saying "You no good motherfucker, I will kill your ass, ain't nobody going to spit on me." Vivian heard [Appellant] hit Samuel on the head and face multiple times. Vivian then heard Samuel fall on the floor as a result of the beating.

In addition to the prolonged physical and verbal abuse endured by both Vivian and Samuel, [Appellant] also deprived Samuel of food and most often water. [Appellant] did this in order to prevent Samuel from going to the bathroom on himself, which would cause [Appellant] to have to assist Samuel. The day following the last beating Samuel endured, Vivian described Samuel as not being himself. Samuel was unable to feed himself, and he was lethargic and listless. Eventually[,] emergency personnel [were] called and Samuel was hospitalized. Hospital personnel [were] informed of the above abuse following Samuel's examination. Samuel was admitted to the hospital on April 19, 2014[,] for dehydration and

acute renal failure as a result of dehydration. He remained in the hospital until he was discharged on April 23, 2014. Following, the hospital stay, Samuel was admitted into a rehabilitation facility where he passed away on August 10, 2014.

Trial Ct. Op., 8/23/17, at 2-4 (record citations omitted).

Appellant entered an open *nolo contendere* plea on September 21, 2016.[2]

On January 5, 2017, the court held a sentencing hearing at which Samuel's granddaughter and Vivian testified. Appellant exercised his right to allocute and apologized to his victims, stating, *inter alia*, "I'm so sorry if I caused any harm, but I didn't intentionally." N.T. Sentencing, 1/15/17, at 47. The Commonwealth also presented to the court the statement Appellant gave to police during their investigation of these crimes, in which Appellant stated "I only play slap with them and I'm only kidding around when I don't slap them hard." He also admitted that he might have committed some of the abuse because of his drinking. **See** Trial Ct. Op., 8/23/17, at 5.

After considering the witness's testimony, and with the benefit of a Pre-Sentence Investigation Report, the trial court sentenced Appellant to an aggregate term of 9 to 18 years' incarceration for his Aggravated Assault convictions, and two concurrent terms of 5 years' probation for his Terroristic

---

[2] The Commonwealth also charged Appellant with Criminal Homicide and Possession of an Instrument of Crime, and two counts each of Recklessly Endangering Another Person and Simple Assault. It *nolle prossed* those charges in exchange for Appellant's *nolo contendere* plea.

Threats and Neglect of Care—Dependent Person convictions.[3], [4]  Each of these

sentences is within the standard guideline range.[5]

Appellant filed a Post-Sentence Motion on January 16, 2017 in which he

claimed that his sentence was excessive.  On January 18, 2017, the court

denied the Motion without a hearing.

This timely appeal followed.  Appellant and the trial court have both

complied with Pa.R.A.P. 1925.

Appellant raises the following issue on appeal:

Did the lower court err as a matter of law and abuse its discretion
in imposing a sentence of incarceration totaling nine to eighteen
years followed by five years of probation, comprised of
consecutive sentences, inasmuch as the sentence was manifestly
excessive and unreasonable, where the sentence far surpassed
what was required to protect the public and account for
[A]ppellant's plea, his lack of significant criminal record[,] which
included no previous crimes of violence, and his rehabilitative

_____

[3] This sentence represented consecutive sentences of 5 to 10 years'
incarceration and 4 to 8 years' incarceration for his convictions of Aggravated
Assault of Samuel and Vivian, respectively.

[4] The court ordered Appellant to serve his probationary sentences consecutive
to his terms of incarceration.

[5] At the hearing, the court noted, and counsel agreed, that Appellant had a
Prior Record Score ("PRS") of 4, and the Offense Gravity Score ("OGS") for
the conviction of Aggravated Assault of Samuel was 11.  The standard range
sentence for this offense was 5 to 6-1/2 years' incarceration.  The OGS for the
conviction of Aggravated Assault of was 10.  The standard range sentence for
this offense was 4 to 5 years' incarceration.  The OGS for Neglect of Care—
Dependent Person and Terroristic Threats were 4 and 3, respectively.  The
standard range sentence for Neglect of Care—Dependent Person was
restorative sanctions to 3 months' incarceration, and for Terroristic Threats
was restorative sanctions to 1 month of incarceration.

needs, including his post-traumatic stress disorder and alcohol abuse?

Appellant's Brief at 3.

Appellant challenges the discretionary aspects of his sentence. ***See Commonwealth v. Lutes***, 793 A.2d 949 (Pa. Super. 2002) (stating claim that sentence is manifestly excessive challenges discretionary aspects of sentencing). However, challenges to the discretionary aspects of sentencing do not entitle an appellant to an appeal as of right. ***Commonwealth v. Sierra***, 752 A.2d 910 (Pa. Super. 2000). Prior to reaching the merits of a discretionary sentencing issue, we must determine whether: (1) appellant has filed a timely notice of appeal; (2) the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) appellant's brief has a fatal defect; and (4) there is a substantial question that the sentence is not appropriate under the Sentencing Code. ***Commonwealth v. Evans***, 901 A.2d 528, 533 (Pa. Super. 2006).

The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. ***Commonwealth v. Anderson***, 830 A.2d 1013, 1018 (Pa. Super. 2003). A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." ***Sierra***, ***supra*** at 912-13.

Appellant has satisfied the first three requirements set forth above: he filed a timely Notice of Appeal; preserved the issue by filing a Petition to Reconsider Sentence; and included a separate Pa.R.A.P. 2119(f) Statement in his Brief to this Court. We, thus, consider whether Appellant raised a substantial question.

Appellant argues that his sentence is manifestly excessive. Appellant's Brief at 13. He acknowledges that his sentences were all within the standard guideline ranges, but avers that the aggregate sentence was disproportionate, unreasonable, and unduly harsh. *Id.* at 13-14. In particular, he argues that the sentencing court failed to balance the impact that his crimes had on his victims with his age, rehabilitative needs, and his acceptance of responsibility for his crimes as evidenced by his *nolo contendere* plea.[6] *Id.* at 13-14, 17. Essentially, Appellant argues that the court erred in sentencing him to consecutive, rather than concurrent sentences.

It is well-settled that a bare challenge to the imposition of consecutive rather than concurrent sentences does not present a substantial question regarding the discretionary aspects of sentence. ***Commonwealth v. Zirkle***, 107 A.3d 127, 133 (Pa. Super. 2014). Moreover, claims that the sentencing court did not adequately consider mitigating factors do not generally raise a substantial question. ***See, e.g, Commonwealth v. Moury***, 992 A.2d 162,

---

[6] Appellant avers the court should have given him more credit for pleading *nolo contendere* because he "spared" Vivian from "the hard job" of testifying against him. Appellant's Brief at 17.

175 (Pa. Super. 2010). Appellant has not raised a colorable claim that his standard range sentence is either inconsistent with a specific provision of the Sentencing Code or contrary to the fundamental norms underlying the sentencing process. Thus, we conclude that Appellant has not raised a substantial question for this Court's review.

Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/13/18