J-A12037-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JAWAN JOHNSON | : | |
| | : | |
| Appellant | : | No. 849 WDA 2021 |

Appeal from the Judgment of Sentence Entered August 19, 2019
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0001843-2020

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JAWAN JOHNSON | : | |
| | : | |
| Appellant | : | No. 959 WDA 2021 |

Appeal from the Judgment of Sentence Entered August 19, 2020
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0010236-2017

BEFORE:   MURRAY, J., McCAFFERY, J., and COLINS, J.*

MEMORANDUM BY COLINS, J.:                    **FILED: AUGUST 19, 2022**

Jawan Johnson appeals *nunc pro tunc* from the judgments of sentence imposed following both a jury and nonjury trial in which Johnson was, in the aggregate, convicted of attempted homicide, robbery by way of inflicting serious bodily injury, aggravated assault, carrying a firearm without a license,

_____

* Retired Senior Judge assigned to the Superior Court.

and possessing a firearm as a person prohibited from doing so.[1] For these

offenses, the lower court sentenced Johnson, in total, to thirty to sixty years

of imprisonment.[2] On appeal, Johnson singularly contends that the sentencing

court abused its discretion in fashioning his sentence when it allegedly did not

consider some of the factors enumerated at 42 Pa.C.S.A. § 9721(b). We

disagree, find no abuse of discretion, and affirm.

The facts underpinning Johnson's crimes do not appear to be in dispute:

> This matter arises out of the shooting and robbery of the victim, Alexis Kelly, on July 11, 2017. The evidence at trial established that the victim got on a Port Authority bus at the Swissvale station and got off the bus at the Homewood station, a ride of only a few minutes. During the ride she noted [Johnson] seated across from her and he was wearing a purple shirt, black sweatpants and a United States Post [O]ffice baseball[-]type hat. While on the bus she took approximately $600.00 out of her purse to count because she intended to deposit the money into an ATM. The victim believed that [Johnson] was able to observe her counting the money. When the bus reached the Homewood station the victim descended the steps and was walking on North Homewood Avenue when she felt a presence behind her and turned to see [Johnson] pointing a gun at her chest. [Johnson] demanded that the victim give him the money in her purse and then shot her in the chest and she collapsed to the ground. [Johnson] then approached the victim and stood over her and shot her a second time, striking her in the arm. [Johnson] then took the victim's purse and fled. The victim then made it to a nearby business where help was summoned. The victim testified that she sustained severe injuries that included a collapsed lung and

---

[1] **See** 18 Pa.C.S.A. § 901(a); 18 Pa.C.S.A. § 3701(a)(1)(i); 18 Pa.C.S.A. § 2702(a)(1); 18 Pa.C.S.A. § 6106(a)(1); and 18 Pa.C.S.A. § 6105(a)(1), respectively. The prohibited possession charge was adjudicated by the court and decided on the same day as the jury's verdict.

[2] Johnson was found to be a second-time offender under 42 Pa.C.S.A. § 9714 and sentenced accordingly.

injuries to internal organs, as she was required to undergo multiple surgeries including removal of portions of her liver and gallbladder. She was also left with permanent scars on her stomach, chest, back, side and arm.

Video from the Port Authority and other cameras in the area showed the victim and [Johnson] while on the bus and in the street before the shooting and some of [Johnson's] movements after the shooting but did not capture the shooting itself. These video[]s including images of [Johnson] discarding a hat found near the scene that matched the hat worn by the shooter. A still image from the videos were circulated on local media to aid in identifying the shooter. Two days after the shooting, on July 13, 2017, [Johnson] contacted police and informed detectives that he was the individual shown in the picture on television. [Johnson] was interviewed by detectives that day and while he acknowledged that he was on the bus with the victim he denied shooting or robbing the victim and stated when he got off the bus he heard a shot being fired and then ran from the scene.

While the victim was still in the hospital, she was shown a photo array and identified [Johnson] as the shooter. In addition a witness to the shooting, who was standing across the street at the time, also identified [Johnson] from a photo array as the shooter. A subsequent search of [Johnson's] residence failed to [uncover] any physical evidence related to the crime. [Johnson's] counsel argued in closing that the victim misidentified [Johnson] as the shooter because [Johnson's] face and clothing were the last things that she recalled seeing while on the bus just prior to the shooting and, in the panic of the shooting, did not adequately observe the actual shooter. Counsel also argued that the fact that [Johnson] admitted that he was at the scene and fled, upon hearing a shot, was insufficient evidence to convict him. The jury found [Johnson] guilty of all charges [brought before it].

Trial Court Opinion, 1/4/22, at 2-4 (unpaginated) (record citations omitted).

Prior to sentencing,

[a] Pre[-S]entence Report [(PSI)] was obtained and reviewed and a sentencing hearing was held on August 19, 2020. At the hearing [Johnson's] counsel requested a sentence at the lower end of the guidelines and concurrent sentences. The Commonwealth referred to the serious and permanent nature and extent of the physical

and emotional injuries sustained by the victim who was only 17 years old at the time of the shooting. The injuries caused her to spend weeks in the hospital and she was left with permanent scarring on various parts of her body. The Commonwealth also noted that [Johnson] had previously served a sentence for an armed robbery and was only released and on probation for three months before again committing the instant shooting and robbery. The Commonwealth also noted [Johnson's] criminal history as set forth in the [PSI] which included several instances of violence, robbery and assault as well as noncompliance with court orders. The Commonwealth requested a sentence of 30 to 60 years.

The [PSI] indicated that [Johnson] became involved in the juvenile system beginning at age 13 related to a theft by unlawful taking and in the years thereafter had petitions filed related to aggravated assault, failure to comply, failure to appear resulting in the issuance of a warrant, robbery and harassment.

*Id*., at 4.

In addition to showing his family history, which involved familial abuse, recurrent drug and alcohol use, and his history with depression and ADHD, the PSI noted Johnson's periods of detention and involvement with rehabilitative programs. Furthermore, over the years, Johnson underwent several mental health evaluations and attended multiple group and individual therapy sessions. It was also indicated that, at times, Johnson was subject to high-risk electronic home monitoring. While Johnson showed at least some amount of progress, he would, too, go through periods of noncompliance or unlawful behavior. For example, in 2013, Johnson pleaded guilty to, *inter alia*, another robbery involving serious bodily injury and various firearms offenses.

At sentencing in the present matter, Johnson indicated that he was never taught the difference between right and wrong, but only came to

recently understand that concept's importance after taking an educational course. Following sentencing, post-sentence motions were filed. However, after trial counsel filed a concurrent petition to withdraw, new counsel was eventually assigned, which led to the supplemental filing of post-trial motions. Those latter motions were ultimately denied.

Although Johnson did not timely file a direct appeal, his appeal rights were reinstated *nunc pro tunc* following him filing a successful petition pursuant to the Post Conviction Relief Act. **See** 42 Pa.C.S.A. §§ 9541-9546. Thereafter, Johnson filed a *nunc pro tunc* notice of appeal. The relevant parties have complied with their respective obligations under Pennsylvania Rule of Appellate Procedure 1925, and as such, this appeal is ripe for review.

On appeal, Johnson asks:

1. Did the lower court abuse its discretion in imposing a sentence that was manifestly excessive in the aggregate and imposed in violation of 42 Pa.C.S.[A.] § 9721, in that the court failed to follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant?

Appellant's Brief, at 4.

As Johnson's sole issue challenges the discretionary aspects of his sentence, we employ a well-settled standard of review:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the

sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

The right to appellate review of the discretionary aspects of a sentence is not absolute, and must be considered a petition for permission to appeal. An appellant must satisfy a four-part test to invoke this Court's jurisdiction when challenging the discretionary aspects of a sentence.

> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has a fatal defect[, *see* Pa.R.A.P. 2119(f)]; and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

* * * *

A substantial question will be found where an appellant advances a colorable argument that the sentence imposed is either inconsistent with a specific provision of the Sentencing Code or is contrary to the fundamental norms which underlie the sentencing process. At a minimum, the Rule 2119(f) statement must articulate what particular provision of the code is violated, what fundamental norms the sentence violates, and the manner in which it violates that norm.

*Commonwealth v. Zirkle*, 107 A.3d 127, 132 (Pa. Super. 2014) (citations omitted).

Here, Johnson filed a timely notice of appeal, filed the requisite post-sentence motion to preserve this sentencing issue on appeal, and, in his brief, he has included a facially appropriate concise statement pursuant to Rule 2119(f). As such, we proceed to determine whether Johnson has raised a substantial question.

Distilled down, Johnson avers that "although his sentence was within the statutory limits and the periods of incarceration [for his offenses] fell within or below the standard range, the court failed to impose an individualized sentence tailored to him and the attendant facts of his case[.]" Appellant's Brief, at 10. Specifically, in contravention of the Sentencing Code, "the court ignored the unique circumstances of the crime[s], and … Johnson's background and rehabilitative needs." *Id***.** As Johnson's argument is predicated on, *inter alia*, the court's failure to consider his rehabilitative needs at sentencing, we conclude that he has raised a substantial question. ***See, e.g***., ***Commonwealth v. Downing***, 990 A.2d 788, 793 (Pa. Super. 2010).

Johnson believes that his aggregate sentence of thirty to sixty years is clearly unreasonable. ***See*** Appellant's Brief, at 17. Johnson highlights the court's on-the-record consideration of his sentence, which details, among other topics, his lengthy juvenile criminal history, the nature of and facts surrounding his present crimes, and his "horrible childhood." *Id*., at 18-19 (citation to the record omitted). The court resultantly gave Johnson twenty to forty years of incarceration for the attempted homicide, ten to twenty years for the robbery, and concurrent sentences, stemming several years in length, for the two firearms offenses.

Our Sentencing Code mandates that:

the court shall follow the general principle that the sentence imposed should call for confinement that is consistent with … the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and

the rehabilitative needs of the defendant.

42 Pa.C.S.A. § 9721(b). As Johnson concedes that the court sentenced him within the guidelines, he must demonstrate, on appeal, either that the guidelines were applied erroneously or that, based on the circumstances of his case, an application of the guidelines was clearly unreasonable. ***See id***., at § 9781(c)(1-2).

With that said, "[o]ur Supreme Court has determined that where the trial court is informed by a pre-sentence report, it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed." ***Commonwealth v. Ventura***, 975 A.2d 1128, 1135 (Pa. Super. 2009) (citation omitted). Although a sentencing court must state, on the record, its reasons for imposing a sentence, that requirement can be satisfied "by indicating that he or she has been informed by the pre-sentencing report; thus properly considering and weighing all relevant factors." ***Id***. (citation omitted).

Johnson cites to this Court's decision in ***Commonwealth v. Coulverson***, 43 A.3d 135 (Pa. Super. 2011), for the proposition that a sentence falling within the standard range of the guidelines can be vacated and remanded if the lower court clearly excludes consideration of certain § 9721(b) factors. Specifically, in ***Coulverson***, which also featured the sentencing court having the benefit of a PSI, "the record reveal[ed] scant consideration of anything other than victim impact and the court's impulse for

retribution on the victims' behalf[.]" *Id*., at 148. In determining that the court failed to craft an individualized sentence, we faulted the court's conclusion, which was evident from the sentencing transcript, "that the defendant should spend as much of his life in prison as the court could order, notwithstanding the tragedy and dysfunction underlying [that defendant's] own life, his individual need for effective intervention, or any rehabilitation he might achieve." *Id*. As the court "focused its consideration entirely on the severity of [the defendant's] offenses and the victims' impact statement[,]" *id*., at 150, there was no basis to conclude that the court considered the defendant's dysfunction in his own life, his remorse for the crimes he committed, or his ability to be rehabilitated. *See id*.

Applying **Coulverson** here, Johnson avers that the court intensely focused on the crimes' impact on the victim "to the exclusion of all other factors[.]" Appellant's Brief, at 21. Johnson then reproduces parts of his own testimony from the sentencing hearing on the topic of rehabilitation. Therein, Johnson explained to the court about his troubled past, his lack of moral education in his youth, and his desire to rectify his actions through both his acknowledgement that he had engaged in bad behavior and his further seeking of help. *See id*., at 22-24 (citation to the record omitted).

Although he indicates that "[t]he court was required to impose a sentence of not less th[a]n 10 to 20 years," *id*., at 24, the court "imposed a sentence three times longer than the mandatory sentence." *Id*. While the

court explicitly considered "the seriousness of the injuries[,]" *id*., it "did not discuss … Johnson's young age, background, and need for rehabilitation." *Id*. Further, the court did not mention the guideline ranges on the record. *See id*.[3]

In its opinion, after discussing Johnson's criminal actions, which involved him shooting the victim multiple times in broad daylight some three months after being released from state prison for a prior armed robbery, as well as the victim's severe injuries, it further remarked:

> The protection of the public and the community as a whole was also considered in that [Johnson] was carrying a gun in his backpack and had no hesitancy in using it to shoot and rob the victim. In addition, [Johnson's] ongoing threat to the community is demonstrated by not only his actions in this case but his history in the juvenile and adult criminal system. There is no doubt that [Johnson] poses a significant threat to the community based on the violent nature of his criminal history.

Trial Court Opinion, 1/4/22, at 8 (unpaginated).

---

[3] Although this ancillary claim about guideline recognition appears to be added as, for lack of a better phrase, an afterthought, Johnson does not refute the fact that he was sentenced within the dictates of the guidelines. While he contends that the court must recognize and/or consider the sentencing guidelines, the record reflects that the Court was fully apprised of the guidelines prior to the crafting of Johnson's aggregate sentence. *See* Sentencing Transcript, 8/19/20, at 10 (identifying that the Commonwealth had "submitted the guidelines to the [c]ourt. [Johnson] is a second strike. He was on probation for a robbery with a firearm when he committed [these] offense[s][]"); *see also Commonwealth v. Rush*, 162 A.3d 530, 543 n.10 (Pa. Super. 2017) (stating that, when the record indicates the court is cognizant of the guidelines ranges, this Court will not reverse "merely because the specific ranges were not recited at the sentencing hearing[]") (citation omitted).

In addition, the court referenced its consideration of Johnson's rehabilitative needs:

> His difficult childhood and family history was recognized; however, it was also noted that throughout his involvement in the juvenile system he was afforded numerous programs … as well as family therapy, an anger management court, an individual service plan, group therapy, individual therapy and education programs. [Johnson] also underwent mental health evaluations. While the [PSI] indicates that there were periods when [Johnson] appeared to have adjusted and done well, indicating an ability to do so, he nonetheless ultimately returned to his prior criminal behavior. In his testimony at sentencing [Johnson] indicated that during his pretrial incarceration he had re-evaluated his life, realized his mistakes and now had support from his family which would assist the help that he needed.

*Id*., at 8-9 (unpaginated). However, heretofore, the court found that nothing seemed to help him sustain a life free from criminality. *See id*., at 9.

The record reflects that the court adequately considered the discrete factors enumerated in § 9721(b). First, while it does not absolve the court's duty to craft an individualized sentence, the court had the benefit of a PSI. Given the existence of a PSI, we assume "the sentencing court was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Commonwealth v. Radecki*, 180 A.3d 441, 471 (Pa. Super. 2018) (citation omitted). Second, as the sentence here was within the standard range of the guidelines, "Pennsylvania law views the sentence as appropriate under the Sentencing Code." *Id*. (citation omitted). Third, the court heard directly from Johnson, at length, about his remorse and ability to become rehabilitated. *See*

Sentencing Transcript, 8/19/20, at 12-16.

As stated, *supra*, the court detailed the horrific nature of Johnson's actions on the victim. **See id**., at 16. Thereafter, the court remarked:

> I agree you've had a horrible childhood. It's outlined in the [PSI], and you've been in and out of [a detention center] and different programs, but nothing seems to work … you're on the street for three months and you pull a gun, and by the grace of God this woman didn't die, and this is like, this is before noon in the middle of the day to get a couple hundred bucks.

**Id**., at 17-18. Clearly, then, the court both considered and acknowledged the attributes underpinning Johnson's background. As distinct from **Coulverson**, the lower court here did not "focus[] its consideration *entirely* on the severity of [Johnson's] offenses and the victims' impact statement." 34 A.3d at 150 (emphasis added). Instead, it recognized that Johnson had a troubled past, implicitly through no fault of his own, but nothing had been working to permanently ameliorate his propensity to engage in unlawful behavior. The court clearly considered Johnson's potential for rehabilitation. While the record evidences that it "chose to emphasize certain factors more heavily than [Johnson's] remorse [and] potential for rehabilitation," **Commonwealth v. Naranjo**, 53 A.3d 66, 73-74 (Pa. Super. 2012), the sentences that it imposed, either individually or in the aggregate, were not unreasonable based on a totality of the circumstances.

Johnson perpetrated a robbery that resulted in serious bodily injury and, too, committed an attempted murder. Obviously, these are significant criminal acts. The court recognized the heinousness of the offenses and, in conjunction

with consideration of the need for public protection and Johnson's own ability to become rehabilitated, crafted an aggregate sentence that was within the standard range of the guidelines.

Given the PSI's existence, the court's explicit and implicit consideration of the § 9721(b) factors, the testimony it received at sentencing wherein Johnson unambiguously established his desire for rehabilitation, and the horrific nature of him shooting the victim multiple times at close range, we find no basis to conclude that his aggregate sentence, or its components, are unreasonable. Accordingly, we affirm.

Judgments of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 08/19/2022