J-S36002-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| THOMAS ALEX CINER | |
| Appellant | No. 1780 WDA 2013 |

Appeal from the Judgment of Sentence May 22, 2013
In the Court of Common Pleas of Allegheny  County
Criminal Division at No(s): CP-02-CR-0004443-2012

BEFORE:  PANELLA, J., JENKINS, J., and STRASSBURGER, J.[*]

MEMORANDUM BY PANELLA, J.                    **FILED JULY 08, 2015**

Appellant, Thomas Alex Ciner, appeals from the judgment of sentence entered May 22, 2013, by the Honorable Kathleen A. Durkin, Court of Common Pleas of Allegheny County.  Ciner alleges that the six to twelve month sentence imposed by the trial court is manifestly excessive.  We affirm.

Ciner entered an open guilty plea to one count of simple assault of a child.[1]  The Commonwealth described the facts underlying the plea as follows.

> Had the Commonwealth proceeded to trial, it would have presented the testimony of several witnesses, including North

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 2701(b)(2).

Versailles police officer Kimberly Silvis…. She would testify that she responded to an address in her jurisdiction in North Versailles on February 4th of 2012 at approximately 11:20. She would testify that she was responding to a call by a neighbor who simply informed the dispatcher that she observed a white male in his twenties to be chasing a juvenile African-American male throughout her yard and the yard next door, and eventually had to enter the house. It was unknown at that point whether the defendant had broken into the house or not. Officer Silvis responded, made contact with several occupants of that address, most notably the defendant who opened the door. She would testify that he opened the door a small ways, informed her that it was nothing, it was just a disciplinary matter and that everything was under control.

She would testify that the amount of distance that the door was open she was able to observe the victim in this case, [Z.P.], who was seated on a couch in the living room of the residence. She would testify that at the time she observed [the victim], she recognized that he was holding a – what appeared to be a tissue or paper towel to his face area. She observed what she would describe to be fresh blood that is red in color. At that point, she would have considered her investigation to have turned to a welfare check on the individual in the house. She then entered the house, began speaking with several individuals. She asked for medics to be dispatched to the area.

[The victim] would have been called to testify. He would have testified that that morning he was talking to the defendant, that the defendant woke him up insisting that he leave with – or get ready to leave with him to go to a location outside of the house. [The victim] would testify that he did not get changed right away, that this appeared to anger Mr. Ciner. From there, he would testify that an altercation ensued, culminating in Mr. Ciner at some point hitting him and placing him in a headlock. Additionally, he would testify that there was a broom used in this altercation.[2] The medics … would testify that they responded and treated [the victim] for some injuries and swelling to his

_____

[2] Defense counsel conceded at sentencing that, as a result of the assault, "there [were broom] bristles embedded in the child's gums that day." N.T., Sentencing, 5/22/13 at 5.

face as well as … swelling to the back of his head. He was transported to UPMC McKeesport where he was treated. He was eventually discharged with instructions for a concussion aftercare treatment.

N.T., Plea Hearing, 2/25/13 at 8-11.

On May 22, 2013, after reviewing a pre-sentence investigation report, the trial court sentenced Ciner to six to twelve months' incarceration, to be followed by two years' probation. Ciner filed post-sentence motions for reconsideration of sentence on May 31, 2013, and June 17, 2013, respectively, which were denied by operation of law. This timely appeal followed.

On appeal, Ciner argues that the sentencing court imposed a manifestly excessive sentence. This claim challenges the discretionary aspects of sentence. A challenge to the discretionary aspects of a sentence must be considered a petition for permission to appeal, as the right to pursue such a claim is not absolute." *See Commonwealth v. McAfee*, 849 A.2d 270, 274 (Pa. Super. 2004).

> An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:
>
> [We] conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42. Pa.C.S.A. § 9781(b).

*Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010) (quotation marks and some citations omitted).

Here, Ciner challenged his sentence in a post-sentence motion and filed a timely appeal. Ciner's appellate brief also contains the requisite Rule 2119(f) concise statement. We must now determine whether Ciner's challenge to the discretionary aspects of his sentence raises a substantial question.

"A substantial question will be found where an appellant advances a colorable argument that the sentence imposed is either inconsistent with a specific provision of the Sentencing Code or is contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Zirkle*, 107 A.3d 127, 132 (Pa. Super. 2014) (citation omitted). "[W]e cannot look beyond the statement of questions presented and the prefatory 2119(f) statement to determine whether a substantial question exists." *Commonwealth v. Christine*, 78 A.3d 1, 10 (Pa. Super. 2013) (citation omitted).

Ciner claims in his Rule 2119(f) statement that "in his case the circumstances were such that *any* sentence of confinement was and is manifestly excessive and inappropriate in view of the criteria specified in three provisions of the sentencing code, i.e., those found in 42 Pa.C.S. §§ 9722, 9724, 9725 [regarding the imposition of an order of probation versus total confinement]." Appellant's Brief at 12. In the argument section of Ciner's brief, he develops this claim by asserting that his sentence of

confinement is excessive due to the trial court's failure to consider what essentially amounts to mitigating circumstances of record. *See* Appellant's Brief at 29-34.

"We note that a generic claim that a sentence is excessive does not raise a substantial question for our review." *Christine*, 78 A.3d at 10 (citation omitted). "Additionally, this Court has repeatedly held that an allegation that the trial court failed to consider particular circumstances or factors in an appellant's case go[es] to the weight accorded to various sentencing factors and do[es] not raise a substantial question." *Id*., at 10-11 (citation omitted). We further note that "[t]his Court has held on numerous occasions that a claim of inadequate consideration of mitigating factors does not raise a substantial question for our review." *Commonwealth v. Disalvo*, 70 A.3d 900, 903 (Pa. Super. 2013) (citation omitted).

While Ciner argues that the sentencing court imposed a sentence of confinement without due consideration of relevant sentencing factors, we note in this regard that the sentencing court reviewed a pre-sentence report. *See* N.T., Sentencing, 5/22/13 at 5. Where the sentencing court had the benefit of reviewing a pre-sentence report, we must

> presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. A pre-sentence report constitutes the record and speaks for itself. In order to dispel any lingering doubt as to our intention of engaging in an effort of legal purification, we state clearly that sentencers are under no compulsion to employ checklists or any

extended or systematic definitions of their punishment procedure. Having been fully informed by the pre-sentence report, the sentencing court's discretion should not be disturbed. This is particularly true, we repeat, in those circumstances where it can be demonstrated that the judge had any degree of awareness of the sentencing considerations, and there we will presume also that the weighing process took place in a meaningful fashion. It would be foolish, indeed, to take the position that if a court is in possession of the facts, it will fail to apply them to the case at hand.

*Commonwealth v. Hallock*, 603 A.2d 612, 616 (Pa. Super. 1992) (citing

*Commonwealth v. Devers*, 519 Pa. 88, 101-02, 546 A.2d 12, 18 (1988)).

As the sentencing court in this case did have the benefit of a pre-sentence report, we must presume that she considered all relevant sentencing factors and fashioned an individualize sentence.

Based on the foregoing, we are constrained to find that Ciner's claim that the sentencing court did not adequately consider relevant factors of record fails to raise a substantial question. We note that even if we were to find that Ciner raised a substantial question for our review, we would still not afford relief. As Ciner repeatedly acknowledges, the trial court's sentence of six to twelve months constituted a standard range sentence. "[W]here a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code." *Moury*, 992 A.2d at 171 (internal citations omitted). Ciner has not articulated any

extraordinary circumstances in this case that would necessitate we reconsider the application of this well-accepted precept to the instant case.[3]

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/8/2015

_____

[3] We note with great concern, and no small amount of reprehension, that the core of Ciner's argument on appeal amounts to a thinly veiled effort to place the blame for this incident on the ten-year-old victim.

Ciner repeatedly references the fact that the victim suffered from "attention deficit/hyperactivity disorder and oppositional defiance disorder" and notes his belief that the victim was a "problem child" who "had caused difficulties at his school due to his being 'aggressive, fight, [and] taking knives to school.'" Appellant's Brief at 6, 8. Ciner also informs this Court that "there had been no difficulties at all, i.e., no violence or other inappropriate behavior, in Appellant's interaction with his *biological* children." *Id*., at 8 (emphasis added). While insisting that his assault of the minor child was an "isolated incident," *id*., at 33, Ciner seemingly glosses over the fact that, because of this incident, the child suffered injuries and swelling to his face and back of his head that required treatment and discharge with instructions for concussion aftercare treatment, *see* N.T., Plea Hearing, 2/25/13 at 10-11. Ciner's attempt to shift the blame for his assault to the ten-year-old victim is patently outrageous and epitomizes Ciner's inability to take responsibility for his actions.