J-S30030-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| STEVEN M. QUADREL | : | |
| | : | |
| Appellant | : | No. 216 EDA 2022 |

Appeal from the Judgment of Sentence Entered December 3, 2021
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s):  CP-46-CR-0003620-2019

BEFORE:   STABILE, J., McCAFFERY, J., and PELLEGRINI, J.*

MEMORANDUM BY McCAFFERY, J.:              **FILED APRIL 20, 2023**

Steven M. Quadrel (Appellant) appeals from the judgment of sentence entered in the Montgomery County Court of Common Pleas after an open guilty plea to one count each of third-degree murder, aggravated assault — victim less than 13 years of age, and possession of an instrument of crime (PIC).[1]  On appeal, Appellant challenges the discretionary aspects of his sentence, alleging the court ignored his rehabilitative needs and imposed a sentence that was "too harsh for the specific facts of this case[.]"  Appellant's Brief at 33.  After careful review, we affirm.

We glean the underlying facts of this case from Appellant's June 14, 2021, open guilty plea hearing and the trial court opinion.

_____

* Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2502(c), 2702(a)(9), 907(a).

On October 24[,] 2018[, Appellant's] father, Dr. Mark Quadrel [(Father)], who was 61 years old, came to visit [Appellant, who at the time was 24 years old,] at [his] apartment located [on] East Airy Street in Norristown, Montgomery County, Pennsylvania. [Appellant and Father] ended up in an argument, so [Appellant] went out to [his] truck and retrieved [his] nine-millimeter Beretta pistol. [Appellant] returned to the bedroom in [his] apartment and loaded the pistol and proceeded to shoot [Father] 23 times in the back and the head which ultimately caused [Father's] death. [Appellant] reloaded the clip multiple times while shooting [Father].

After shooting and killing [Father, Appellant] exited [his] apartment and pointed the laser sight of [his] gun at a 12-year-old boy's face who was outside riding his scooter with his brother and a friend, ultimately lowering the gun and shooting at him, hitting his hand. The boy was unknown to [Appellant] at the time, but was later identified as [J.G.].

N.T. Open Guilty Plea, 6/14/21, at 10-11. After agreeing to the Commonwealth's recitation of facts, Appellant pled guilty to one count each of third-degree murder, aggravated assault, and PIC.[2]

This matter proceeded to sentencing on December 3, 2021, where the following was adduced. It was undisputed that Appellant was raised in a supportive and loving family. Trial Ct. Op., 3/25/22, at 3-7. When Appellant was in high school, he was prescribed opiates for an injury, and eventually became addicted to drugs. *Id.* at 7. Appellant later "turned his life around[,]" and during this time, Father provided him with support. *See id.* at 5, 7.

---

[2] Appellant was also charged with one count each of first-degree murder, aggravated assault, and recklessly endangering another person (REAP). *See* 18 Pa.C.S. §§ 2502(a), 2702(a)(1), 2705. The Commonwealth *nolle prossed* these charges in exchange for Appellant's guilty plea.

Appellant described Father as his "best friend[.]" *Id.* at 6. Leading up to this incident, Father was allegedly "concerned about Appellant['s] behavior[,] believed Appellant was acting paranoid, and . . . was trying to arrange mental health help for [him]." *Id.* at 8-9; *see also* N.T. Sentencing, 12/3/21, at 54-55. At the sentencing hearing, Appellant stated that in the weeks before the incident, he was "hearing voices [and] having delusions and hallucinations[,]" and believed "people [and Father] were trying to kill [his] family and friends." N.T. Sentencing at 42. Appellant thought he "could save everyone's lives if [he] could stop" Father, and that he was "acting for the greater good of everyone." *Id.* He also said he was remorseful for his crimes and believed he was having a "psychotic episode." *Id.* at 40-42.

The Commonwealth presented testimony from, *inter alia*, the minor victim J.G. and his mother. Additionally, Appellant's aunt and Appellant's two brothers expressed concerns about Appellant's drug use and fears that Appellant would reoffend and hurt other family members. *See* N.T. Sentencing at 15, 18, 23-24, 28, 31.

Appellant then presented the testimony of a family friend, as well as another aunt, who stated she did "not fear" him and thought he needed help. N.T. Sentencing at 40. Counsel for Appellant noted that after a psychological evaluation, one of Appellant's doctors stated it is "likely that [Appellant's] mental health symptoms can be effectively treated and maintained through a combination of psychiatric medications, counseling, and social support." *Id.* at 58.

- 3 -

After the conclusion of testimony and argument, the trial court imposed a sentence of 17 to 40 years' incarceration for third-degree murder, a consecutive term of five to 10 years' incarceration for aggravated assault, and a concurrent term of one to five years' incarceration for PIC — all standard range sentences under the sentencing guidelines. Appellant's aggregate sentence is thus 22 to 50 years' incarceration.

On December 12, 2021, Appellant, through his counsel Coley O. Reynolds, Esquire, filed a timely post-sentence motion alleging the trial court:

A. Sentenced [Appellant] without providing sufficient reasons for the sentence imposed;

B. Failed to give careful consideration to all relevant factors;

C. Failed to give careful consideration and proper weight to [Appellant's] acceptance of responsibility;

D. Failed to consider and give proper weight to the serious mental breakdown [Appellant] was suffering from at the time of the incident, as evidenced by the physical observations of police officers, medical staff and the expert opinions of [two] doctors who evaluated [Appellant]; and,

E. Failed to take into account the remorse and shame felt by [Appellant].

Appellant's Motion for Post-Sentence Relief, 12/12/21, at 2 (unpaginated). That same day, Attorney Reynolds also filed a motion to withdraw from representation, stating that Appellant "is indigent, will not be retaining [Attorney Reynolds] on appeal[,] and wishes to have counsel appointed for all future proceedings." Motion to Withdraw and Appoint Counsel, 12/12/21, at 2. On December 16, 2021, the trial court denied Appellant's post-sentence

motion. Order, 12/16/21. On December 20th, the court granted Attorney Reynold's motion to withdraw and appointed Jeffrey Matus, Esquire, from the Montgomery County Public Defender's Office to represent Appellant. **See** Order, 12/20/21. Appellant then filed this timely appeal and a court-ordered concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant raises the following claim on appeal:

> Whether the trial court abused its discretion in sentencing Appellant to a manifestly excessive and clearly unreasonable aggregate term of [22] to [50] years['] imprisonment for third-degree murder and aggravated assault given the individual circumstances of the case and the rehabilitative needs of . . . Appellant?

Appellant's Brief at 6.

Preliminarily, we note the Commonwealth argues Appellant's issue is waived because his concise statement did not adequately identify his claim and the trial court had to guess what he would argue in his brief. **See** Commonwealth Brief at 11-12. Appellant's Rule 1925(b) statement alleged the following:

> The trial court abused its discretion in this matter by imposing a manifestly excessive aggregate sentence of not less than [22] nor more than [50] years of incarceration.

Appellant's Pa.R.A.P. 1925(b) Statement, 2/3/22.

Indeed, the trial court stated in its opinion that Appellant did not raise a specific claim in his statement:

> Appellant does not set forth in his 1925(b) Statement any reasons as to why he believes the aggregate sentence to be "manifestly excessive." However, reading his post-sentence motion along

- 5 -

with his [Rule] 1925(b) Statement, [the trial c]ourt surmises that he will argue that [the c]ourt failed to consider the various factors mentioned in sentencing him.

Trial Ct. Op. at 14.

We remind Appellant's counsel, Attorney Matus, that when raising a challenge to the discretionary aspects of a sentence, Rule 1925(b) requires that statements "identify each error that the appellant intends to assert with sufficient detail to identify the issue to be raised for the judge." Pa.R.A.P. 1925(b)(4)(ii). Further, a Rule 1925(b) statement cannot be "too vague to allow the [trial] court to identify the issues raised on appeal[.]" *See Commonwealth v. Hansley*, 24 A.3d 410, 415 (Pa. Super. 2011) (Rule 1925(b) Statement must be specific enough to allow a trial court to identify and address the appellant's claim on appeal, or it may be subject to waiver). Nevertheless, on this particular record, we decline to find waiver.

In his sole issue on appeal, Appellant avers that the court abused its discretion when it "ignored [his] rehabilitative needs" and imposed a sentence that was not "individualized" and "too harsh for the specific facts of this case[.]" Appellant's Brief at 30, 33.

"Generally, a plea of guilty amounts to a waiver of all defects and defenses except those concerning the jurisdiction of the court, the legality of the sentence, and the validity of the guilty plea." *Commonwealth v. Morrison*, 173 A.3d 286, 290 (Pa. Super. 2017) (citation omitted). However, an appellant who enters an open plea may challenge the discretionary aspects of their sentence on appeal. *Commonwealth v. Luketic*, 162 A.3d 1149,

1159 (Pa. Super. 2017). It is well established that such a challenge does not entitle an appellant to "review as of right." **Commonwealth v. Caldwell**, 117 A.3d 763, 768 (Pa. Super. 2015) (*en banc*). Rather,

> An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test: (1) whether appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.
>
> *        *        *
>
> A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

**Id.** (citations omitted). Further, an allegation that the trial court failed to consider rehabilitative needs and imposed an excessive sentence, absent consideration of mitigating factors, raises a substantial question for our review. **See Commonwealth v. Akhmedov**, 216 A.3d 307, 328 (Pa. Super. 2019) (*en banc*) ("[A]n excessive sentence claim — in conjunction with an assertion that the court failed to consider mitigating factors — raises a substantial question.") (citation omitted).

In the present case, Appellant filed both a timely notice of appeal and a timely post-sentence motion. In addition, his brief includes the requisite concise statement of reasons relied upon for appeal pursuant to Pa.R.A.P.

2119(f), wherein he alleged his sentence was manifestly excessive because it is "too severe a punishment for the individual circumstances of the case" and did not properly consider the protection of the public, the gravity of the offense, or his rehabilitative needs. **See** Appellant's Brief at 22-24. We conclude Appellant has raised a substantial question for our review and properly invoked this Court's jurisdiction. **See Akhmedov**, 216 A.3d at 328; **Caldwell**, 117 A.3d at 768.

Returning to Appellant's argument, he avers the trial court did not properly consider the sentencing factors in Section 9721(b) and imposed a manifestly excessive sentence. Though he concedes that his actions were "completely senseless, entirely unjustified, and an extremely devastating event to many people[,]" Appellant contends that his aggregate sentence of 22 to 50 years' incarceration remains too severe a punishment. Appellant's Brief at 27. Instead, he suggests that "a sentence in the middle of the guideline range" would be more appropriate. **Id.** at 34. Appellant insists the trial court merely "paid lip service" to the sentencing factors, and instead "was only concerned about the seriousness" of the offenses "and not the reasoning behind them." **Id.** at 28, 34 (record citation omitted). He emphasizes that he did not have a criminal record prior to this "isolated incident" and that there is "strong evidence" that he can be rehabilitated. **Id.** at 30. We conclude no relief is due.

We consider the following standard of review:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Zirkle*, 107 A.3d 127, 132 (Pa. Super. 2014) (citation omitted). When fashioning a sentence, the trial court must consider the "protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S § 9721(b).

Though Appellant has raised a substantial question, we conclude he is not entitled to relief. The sentencing transcript reveals the trial court considered Appellant's rehabilitative needs and the surrounding factors of the incident:

> [The court considered] the presentence investigation and report together with the Rise Above, also known as the PPI evaluation, summary and report. I have received the sentencing memorandums from . . . the Commonwealth and [Appellant]. There are letters, reports, and statements attached. I've considered all that. Of course, I've considered the sentencing code and the sentencing guidelines. We referred to the guidelines at the beginning of this proceeding.
>
> Turning for a moment to the PPI evaluation, the diagnosis in that report which was done July 15th, 2021, the diagnosis is cannabis use disorder severe in a controlled environment. Other substance abuse disorders in sustained remission. Unspecified depression disorder and ADHD.
>
> They do recommend treatment based on those findings including drug and alcohol, anger management, life skills, and

other treatment while he's in the custody of the Department of Corrections.

The presentence investigation and report . . . set[ ] forth the offense conduct[.] It sets forth his statement regarding the offense which is lengthy. I have considered it, of course. His criminal history, which is insignificant, there was a traffic offense listed.

The family situation and background is set forth at length in the report. That, of course, was supplemented today by testimony and by the various submissions from the various people by way of letters and otherwise. [Appellant's] physical and mental conditions are also set forth in the presentence investigation and report. They refer to records from the Montgomery County Correctional Facility, things that have been mentioned otherwise during this proceeding. The drug and alcohol use is mentioned in this report as is his education and employment and economic status.

The Court has, of course, considered in detail [Appellant's] mental status before, during, and after this murder of his father. The mental status at the time of the offense, of course, is not a defense, nor is it any justification for the conduct that he engaged in.

I do note that neither [v]ictim, his father, nor the 12-year-old child, did anything to cause [Appellant] to have any reason to take the conduct that he did to the degree that he did.

I have considered the substance abuse issues as raised also. I, of course, considered the support that [Appellant] has among many friends and family. I do believe he is remorseful. I note that he quickly accepted responsibility for his actions in his early encounters with the police and that he did enter a guilty plea to third-degree murder in this case.

But certainly the question of total confinement is appropriate under the circumstances of this case given the need for the protection of the public, the gravity of the offenses, and I say offenses because in my mind they're two separate offenses to some extent. The impact on the victims and the community is extreme as stated by the prosecution. You can't have any worse impact on a victim than the taking of their life, and that was his father, by all accounts a good man, a good doctor, a contributing

- 10 -

member of the community, a good family man, just all in all a good person who didn't deserve to die that day.

And then we have the 12-year-old innocent child at play in a peaceful neighborhood, the impact on that child and his mother in the community is extensive and extreme.

I've considered the rehabilitative needs of [Appellant]. I do believe that any lesser sentence than the sentence that I will impose would depreciate the seriousness of these crimes.

In reviewing the facts of this case, it is significant that [Appellant] pointed the gun, the nine-millimeter with a laser sight, at the forehead of this child and then he shot the child. The shooting of the child was in no way necessary to complete the murder or to facilitate his flight after the murder of his father. So that was extremely dangerous and terrorizing conduct after the fact of the murder.

I do note that the various witnesses did raise concerns about the future dangerousness of [Appellant]. They expressed their reasoning on the witness stand or in their letters. In my mind, a consecutive sentence is clearly appropriate on the aggravated assault charge given the separate danger and serious criminal activity. This child was in no way a threat to [Appellant].

N.T. Sentencing, 12/3/21, at 60-64.

Further, in its opinion, the trial court noted that it "found Appellant['s] expressions of remorse credible[,]" and reiterated that it considered the sentencing factors in Section 9721(b) as well as Appellant's mental state "before, during, and after" the murder and aggravated assault of the child victim. *See* Trial Ct. Op. at 16-17. The record supports the trial court's conclusions.

The trial court considered each of the sentencing factors thoughtfully before imposing Appellant's sentence. Appellant shot his father 23 times in the head and back, killing him, and then fired a gun at a child, grazing his

hand. The court imposed a standard range sentence for each conviction, considered the acts against Father and the child victim were separate offenses, and imposed the sentences for murder and aggravated assault to run consecutively. While the court recognized Appellant's remorse and mental health needs, it nevertheless determined that the severity of the crimes necessitated the above sentence. Appellant's disagreement with his sentence does not amount to the trial court merely "pa[ying] lip service" to the Section 9721(b) factors or an abuse of its discretion, and this Court cannot reconsider the above factors to fashion a sentence more favorable to Appellant. **See** Appellant's Brief at 28. Appellant has failed to establish that the trial court imposed a manifestly excessive sentence, and as such, no relief is due. **See** **Zirkle**, 107 A.3d at 132.

Judgment of sentence affirmed.

*Judgment Entered.*

Joseph D. Seletyn, Esq.
*Prothonotary*

*Date: 4/20/2023*

- 12 -